ALMIRA WORTHING *versus* SIMON WEBSTER.

The recitals in a tax deed, unless made so by statute, are not, in themselves, evidence of a compliance with the statute in making the sale; but the burden is upon the party claiming title under such deed to prove, by other evidence, a full compliance with the requirements of the statute.

No lapse of time will afford presumptive evidence of the regularity of a tax sale, when the purchaser, and those claiming title under him, have had no possession under the deed. But an ancient deed and its recitals, with subsequent, long continued and uninterrupted possession, are evidence from which a compliance with the requirements of the statute may be presumed. The question so raised is one of fact, to be determined by the jury, upon all the evidence in the case.

THIS was a real action, to which the tenant pleaded the general issue, with a brief statement of the statute of limitations.

The testimony was reported by DAVIS, J., at the April term,

1858.    The demandant was a grand-daughter of Salter Soper, who died in 1807, leaving eight children.    The mother of the demandant, Margaret Soper, was married to Isaac Oakman, before the death of her father; and she died, also, in November, 1807, leaving two children, the demandant, and a sister, who died a few weeks afterwards, without issue.    The demandant, therefore, became the owner, by inheritance, of one-eighth part of the premises claimed in the writ.

The demandant was born in 1805, and was married to Jonathan Worthing in 1823, being then only eighteen years old.    Her husband lived until 1854.    This suit was commenced in June, 1856.

The other facts in the case sufficiently appear in the opinion of the Court.

*Shepley & Dana* argued for the demandant:—

1. This action is not barred by the statute of limitations, notwithstanding the lapse of time, for the following reasons:

The right of Margaret Soper to the share of the estate of her father, Salter Soper, was suspended by her coverture with Isaac Oakman, from 1807.    Statute of Mass. 1786; Laws of Mass. 328.

The share of the infant sister of the demandant, descended to the demandant and not to the demandant's father.    Laws of Mass. 338; Stat. 1821, c. 38, § 17.

The demandant's right of action was suspended from November 3, 1823, until the death of the husband in 1854, she being a minor in 1823, and under coverture from that time.    Stat. 1821, c. 62, § 4.

The demandant is, therefore, entitled to recover, unless her right is barred by the proceedings under the direct tax of 1815.

2. The case shows that Salter Soper, *Sen.*, was seized and possessed of the premises in controversy in 1808; that Sept. 14, 1808, his son Salter Soper, *Jr.*, was appointed administrator of his father's estate; that from that time, as administrator, he was in possession of the premises; and that, at the time when the tax was assessed, levied, and the estate sold,

he was in possession, as administrator, and was indebted to the estate for funds in his hands, to the amount of some $500, without including the rents and profits of the premises.

While thus in possession as administrator, owing the estate of his father more than $500, Salter Soper, jr., suffered the homestead, appraised in 1808 at $1500, to be sold on a tax of $6,74.

Assuming, for the sake of the argument, that the tax is proved to have been legally assessed, (though that point is open to demandant and all objections reserved,) still the transaction shows on its face an attempted cheat on the part of the administrator, who, instead of guarding the interests of the estate, makes a corrupt agreement with his own father-in-law, (for fraud burrows under the cover afforded by relationship,) by which the administrator was to suffer the estate to be sold for the taxes, and the father-in-law to buy it in for the administrator's benefit.

That this was the case, is too plain to need argument, for we see, that on the same day the deed from the collector to his father-in-law is acknowledged, the same witness attests a conveyance of the same property from his father-in-law back to him.

The parties living in different towns, one in Gray, the other in Minot, both come to Portland, and Nash takes a deed from Storer, and the same day, and at the same time, acknowledges before Storer a conveyance back of the same property to the one who should have seen to it that the property had not been sold. It was one transaction, and, when the deed from Nash had been given, Salter Soper held the premises the same as if he had never suffered this pretended break in the title. He held the whole in trust for the legal heirs, and he could give no better title after this than he could have done before.

To put the construction most favorable to the good faith of the administrator, who is shown to have been indebted to the estate, and to have had funds of the co-heirs in his hands at the time of the tax-sale, the law will presume that the

money he paid Nash, if he paid any, was the money of all the heirs, and for their benefit. See 2 Williams on Executors and Administrators, pp. 801, 1566; *Wiley's Appeal*, 8 Watts & Sargeant, 246; *Chronister* v. *Bushey*, 7 ib., 152, and cases cited by counsel; Story's Agency, § § 210, 211; 4 Kent's Com. 438, (5th ed.;) *Myers' Appeal*, 2 Barr, 463. "Where the general agent of heirs purchases their lands which have been sold for taxes, instead of redeeming, the purchase inures to their benefit."

"An executor or administrator, being a mere fiduciary, is bound not only to perform his duty with fidelity, but with proper skill and reasonable diligence, so as to promote the interests of those interested in the estate of the deceased." Wiley's Appeal.

The title of demandant was not lost, unless it was by the fraud or negligence of the administrator, who is now claimed to have taken and transmitted a good title, by means of this very fraud or negligence, and the tenant seeks to take advantage of and perpetuate that wrong. *Rankin* v. *Porter*, 7 Watts, 390; *Smiley* v. *Dixon*, 1 Penn. 441. In this last case, the Court cite Judge KENT as saying, "that one of two devisees cannot purchase an encumbrance on their joint estate, and use it to sell the land and strip the other of his property."

There is no evidence whatever in the case of any assessment of a tax on the premises. The collector's deed is not admissible until after the foundation has been laid by the other proof of the assessment of the tax and compliance with the other provisions of law. The deed itself cannot prove these facts, because, without preliminary proof of these facts, the deed is not admissible.

"The recitals in a tax deed are not evidence against the owner of the property, but the facts recited must be established by proof *aliunde*, nor is the conveyance itself, because of its solemnity, or upon any conceivable principles, *prima facie* evidence that the prerequisites of the law had been complied with by the various officers of the law who conducted the proceedings." Blackwell on Tax Titles, p. 93, and cases

Worthing v. Webster.

cited; *Nally* v. *Fenwick*, 4 Randolph, 585; *Nancarrow* v. *Weatherbee*, 6 Mart.. (La.,) 347;. *Emery* v. *Harrison*, 1 Harris, 317; *Trescott* v. *McDonald*, 22 Maine, 402.

. " The fact that they were regular must be proved, and the *onus probandi* rests, in all cases, upon the purchaser, or those claiming under him. He must show affirmatively, step by step, that every thing had been done which the statute makes essential to the due execution of the power conferred upon the officers." Blackwell's Tax Titles, p. 94, and .cases cited;. *Jackson* v. *Shephard*, 9 Cowen, 88.

*Howard & Strout* argued for the tenant: —

. 1. The tax was rightly assessed to Salter Soper, the owner or occupant. 3 U. S. Statutes at Large, pp. 164, 230.

2. The deed of Woodbury Storer, who is admitted to be the collector at the time, is an ancient deed, found in the possession of the owner of the land, the possession having gone with the deed, and, as such, is entitled to all the presumptions in its favor which apply to ancient deeds. The law infers performance of all the preliminaries to its validity. 1 Greenl. Ev. § § 20, 21, 144; *Boothby* v. *Hathaway*, 20 Maine, 256; *Stockbridge* v. *Stockbridge*, 14 Mass. 257; *Colman* v. *Anderson*, 10 Mass. 108; *Pejepscot Proprietors* v. *Ransom*, 14 Mass. 144; *Shilkrucht* v. *Eastburn*, 2 Gill & Joliers, 114; *Battles* v. *Holly*, 6 Greenl. 145; *Phampsam* v. *Carr*, 5 N. H. 510.

2. Storer was a public officer. The law presumes that a public officer observes the law in his official acts. *Bass* v. *Reed*, 1 Wheat. 482; *Rex* v. *Catesby*, 2 B. & C. 814; *Rex* v. *Whiston*, 4 A. & E. 607.

3. The deed of Storer recites all the preliminary proceedings necessary to give it validity. The deed being more than thirty years old is an ancient deed, and recitals in an ancient deed are *prima facie* proof of the facts recited. *Stokes* v. *Dames*, 4 Mason, 268; *Fuller* v. *Lawtan*, 1 Spencer, 61, cited in 4 U. S. Digest, p. 701, § 1009; *James* v. *Letsler*, 8 Watts & Sarg. 192, and cited in 4 U. S. Digest, p. 702, § 1027;

*Garwood* v. *Dennis*, 4 Binn. 314; *Doe* v. *Phelps*, 9 Johns. 169; *Doe* v. *Campbell*, 10 Johns. 475. There is no evidence in this case to contradict the *prima facie* proof.

4. The deed from Storer to Nash was not made till the right of redemption, from the sale, had expired. The statute so required. 3 U. S. Stat. at Large, p. 174, § 27. At that time the title of Nash was perfect. He then had a right to convey to Salter Soper, or any one else. If the purchase by Soper can give plaintiff any right, it is in equity, on the ground of a trust, and not at law. This defendant is an innocent purchaser.

5. Salter Soper, in his capacity of administrator, had no control over the land, and was under no obligation to redeem from the sale. He was in possession as tenant in fee, of an undivided portion of it. He was not bound to redeem the land for his co-tenants. *Gardner* v. *Gerrish*, 23 Maine, 53.

6. His last account was settled in 1809, and it does not appear that he was acting as administrator in 1815.

The opinion of the Court was drawn up by

MAY, J.—In 1807, Salter Soper died seized of the farm situate in Gray, which is described in the demandant's writ. At his decease he left eight children, or their representatives. Of these children, one named Margaret had then been married to Isaac Oakman. She died Nov. 5, 1807, leaving only two children, the demandant, and a sister who died without issue, about a fortnight after the death of her mother. Isaac Oakman, the father of the demandant, lived until Nov. 12, 1847. It is, therefore, apparent that the demandant, upon the death of her mother and sister, became seized of that share in the farm which descended from her grandfather, Salter Soper, to her mother, subject only to her father's life estate therein as tenant by the curtesy. That share was one undivided eighth, and is the same now demanded in this suit. The demandant's right to recover possession of said share, after the termination of her father's life estate in 1847, is beyond all question,

unless she is barred thereof by reason of the facts relied upon in defence.

The tenant sets up, as his first ground of defence, a title under a tax deed from Woodbury Storer, as collector of a direct tax levied by the United States in 1815, to one Jonathan Nash, through whom he claims by appropriate mesne conveyances. This tax deed is dated Oct. 13, 1818, and was duly acknowledged and recorded on the 14th of November following. It is admitted that said Storer was duly appointed as collector of said tax, but there is no other evidence in the case that said tax was legally assessed, or that said collector, in making sale of said farm for the non-payment of said tax, complied with any of the requirements of the federal statutes authorizing the same, except what arises from the *recitals* in the collector's deed to Nash, and the long continued subsequent possession of the premises by the tenant, and those under whom he claims. It is contended in defence that, from the recitals in said deed, said deed being an ancient one, taken in connection with such subsequent possession, under it, the Court ought to presume a full compliance with the requisitions of the statute, so far as is necessary to give efficacy to the deed.

In determining this question, it becomes important to look into the nature of the possession and all the circumstances attending it. Nash, the grantee in the tax deed, does not appear to have been in possession of the premises at any time. He conveyed them to Salter Soper, his son-in-law, one of the children of Salter Soper, deceased, who was also the administrator upon his father's estate, by a deed of quit-claim bearing even date with the acknowledgment and registry of Storer's tax deed to him. The consideration recited in this deed is only $21, and the case shows that at this time Salter Soper, the grantee, had in his hands, as administrator, several hundred dollars belonging to himself and his co-heirs, which is still unpaid. He appears, also, to have been in possession of said premises after the death of his father, and to have charged

himself, in his account as administrator, settled with the judge of probate in October, 1809, with the sum of $70 for the improvement thereof. The value of the farm appears to have been about $1500, and the direct tax assessed upon it, was only $6,74. The whole farm was sold July 16, 1816, for the sum of $8,09, being the amount of said tax and the incidental expenses of the sale. So far as the case shows, Salter Soper, the administrator and tenant in common with the other heirs, remained in possession of said premises from the death of his father, until Nov. 16, 1843, when he conveyed them to Albert W. Soper. The character of Salter Soper's possession may depend very much upon the purpose and effect of the deed from Nash to him.

In view of the foregoing facts, if this deed to Salter Soper was not intended as an extinguishment of the tax title, it is difficult to reconcile the conduct of said Soper, under all the circumstances of the case, with any other theory than that of an attempt, on his part, to practice a gross fraud upon his co-tenants. If, however, he intended to claim title in the farm as against them, and all the preliminary steps necessary to give effect to the tax deed had been taken, we cannot doubt, in view of the authorities cited, that equity would regard and treat the conveyance from Nash to him, as a conveyance in trust for the benefit of all the co-heirs or tenants in common. In consequence, therefore, of such resulting trust, his possession, down to 1843, would be that of one co-tenant holding in trust for the benefit of all the *cestue que trusts.* Such a holding, for any length of time, would, undoubtedly, have much less tendency to show that all the preliminary steps necessary to make the deed effectual had been taken, than a possession under claim of an absolute title free from such trust. If, upon the other hand, Salter Soper is to be regarded as having been in possession, claiming the whole estate, in no way subservient to the rights of his co-heirs, then the fact that such a possession was continued from the date of Nash's deed to him, to the inception of this suit, is to have such effect in raising a presumption that the recitals contained

in the tax deed are in accordance with the facts stated, as it deserves.

The question then returns to the recitals in the tax deed, and the subsequent possession of the tenant and those under whom he claims, taken in connection with all the other facts in the case, furnish satisfactory evidence of a compliance with the requisitions of the federal statute, and of the performance of such acts on the part of the collector, and all others, as are absolutely essential to authorize and give effect to the deed. This inquiry involves two questions. First, whether these recitals, in view of all the facts, are to be taken as true, and second, if so, whether they are sufficient to make the deed effectual to pass the title.

By the principles of the common law, the recitals in a tax deed are not, in themselves, evidence of a compliance with the requirements of the statute. Blackwell on Tax Titles, 603. In all cases where the statute does not make them evidence, the burden is upon the party claiming title under such deed to show, by other evidence, step by step, a full compliance. Ibid, 94, and cases there cited. On page 97 of the same work, it is said to be the business of the grantee " to collect and preserve all the facts and muniments on which his title depends." It is also well settled that no lapse of time will afford presumptive evidence of the regularity of a tax sale, when the purchaser, and those claiming under him, have not had possession under the deed, and no such presumption can be indulged where the evidence clearly shows upon its face that the proceedings were irregular, and, yet, it is very clear, in view of the authorities cited upon both sides, that an ancient deed and its recitals, with subsequent possession following the deed, and long continued, are facts competent for the consideration of a jury, and should have their proper weight in determining whether the matters and things recited in such deed, as having been performed, were in fact performed. Such facts are not, however, conclusive evidence of such performance. They are merely evidence to be considered with all the other evidence in the case.

Worthing *v.* Webster.

In the case before us, authorized as we are to draw inferences as a jury might, we have no hesitancy in coming to the conclusion that the evidence arising from the age of the deed relied upon in defence, and its recitals, with the subsequent possession which is shown as following the deed, when considered in connection with the fact, that the whole farm was sold for so small a sum; that the purchaser immediately conveyed it to his son-in-law, who was then in possession of the farm, and had been for some years before, and who had abundant funds in his hands, as administrator on his father's estate, and arising from the income of the premises, with which he might have discharged the tax; and the further fact, that the grantee of Nash was one of the tenants in common of the farm with the other heirs of his father, and nearly related to them by ties of consanguinity, and that the demandant, if not others of the tenants in common, was, until very recently, under legal disability to test the validity of the deed or titles, is insufficient to establish the fact, that the prerequisites recited in the deed, and required by the statute to make the deed effectual, have been performed.   The whole evidence fails to satisfy us of that fact.   The title, therefore, under that deed, is not established.   Our conclusion upon this question renders it unnecessary to consider whether the recitals contained in the deed, if shown to be true, embrace all the particulars which are essential to give efficacy to the deed.

The only other ground of defence is, that the tenant, and those under whom he claims, have so long been in the open, notorious, exclusive and adverse possession of the premises in controversy, that the demandant, by force of our statutes, is barred of her right to recover.   This ground cannot be sustained upon the facts before us.   There is no evidence of any adverse possession prior to the tax deed in 1818.   Up to this time, the possession of Salter Soper was that of one tenant in common for the use and benefit of all.   Whether the deed from Nash to him was regarded by him as conveying an indefeasible title, or an estate in trust; or as extinguishing the

tax title; or whether he thought the tax title altogether un-availing and void, is, in our judgment, wholly immaterial in its effect upon this question of a title acquired by disseizin, because, whatever may have been the character of the posses-sion of Salter Soper, and those claiming under him, it does. not seem to have been continued long enough to bring the case within the provisions of the statute cited by the counsel in defence, (R. S., 1857, c. 105, § 15,) so as thereby to cut off by limitation the rights of the demandant. She was born July 17, 1805, and was married to Jonathan Worthing, Nov. 23, 1823. Her testimony shows that his death occurred in 1853 or 1854. The writ in this case is dated June 19, 1856, before the expiration of forty years from the date of the tax deed, which was Oct. 13, 1818. During almost this whole period the demandant was under a legal disability to commence a suit for the recovery of her rights. Her infancy and coverture were not disconnected, and the latter continu-ed until two or three years prior to the date of her writ. The result is, that the tenant must be defaulted, and the de-mandant is entitled to recover one undivided eighth part of the farm of which her grandfather died seized, and which is demanded in her writ. No claim appears to have been made for rents and profits.                    *Tenant defaulted.*

TENNEY, C. J., HATHAWAY, CUTTING, GOODENOW, and DAVIS, J. J., concurred.